J-A06021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN MUSGRAVE | : | |
| | : | |
| Appellant | : | No. 232 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 3, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-SA-0001438-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                 **FILED: May 3, 2024**

John Musgrave appeals *pro se* from the judgment of sentence entered following his conviction at a trial *de novo* for the summary offense of disorderly conduct. After careful review, we affirm.

The Magisterial District Court convicted Musgrave of disorderly conduct. Musgrave filed a summary appeal, and he was granted a trial *de novo*. The trial court summarized the trial testimony as follows:

> During the *de novo* hearing of February 3, 2023, the victim, Deaja Vire, testified that on September 9, 2022, she was confronted by [Musgrave] at her at her place of business, while she was styling a client's hair. [Musgrave] is the owner of property located at 244 South Highland Avenue, Pittsburgh, Pennsylvania, 15206. The victim operated a hair salon in the building and had been a tenant in that space for five or six years. The victim also worked as a flight attendant so she was away often. [Musgrave] had sent her a lease renewal which the victim had not yet signed since she had been away.

[Musgrave] confronted the victim while she was working on a client and threatened to change the locks unless she signed a new lease immediately. The victim testified that [Musgrave] basically got in her client's face, and she has not seen her client since that date. A video of the incident was viewed by [the trial court] and was entered into evidence without objection.

The victim called the police. Officer Rebecca Franks, with the City of Pittsburgh Police Department, testified that [Musgrave] was not at the scene when she arrived so Officer Franks called him and told [Musgrave] to go through the leasing office, since he had a leasing agency.

Less than 20 minutes after Officer Franks spoke with [Musgrave], telling him to stay away from the victim and let the leasing agency handle everything, the victim called to report that [Musgrave] was taking the locks off the door. [Musgrave] came in and started changing the locks, and at one point took the doorknob off.

When Officer Franks returned to the scene, there were no locks on the front or back doors for the victim to secure her business. The victim's client asked Officer Franks to escort her to her car because she did not feel safe going to her car. After Officer Franks returned from escorting the client to her car, [Musgrave] returned and Officer Franks remained there while [Musgrave] put the locks back on the doors and Officer Franks made [Musgrave] give the victim back the key. The victim felt threatened and it caused her stress and anxiety.

Trial Court Opinion, 5/12/23, at 1-2 (paginated for clarity; record citations omitted). Following trial, the court found Musgrave guilty and imposed a fine of $200.00, plus court costs. This timely appeal followed.

Musgrave raises the following issues on appeal:

1. Could [the trial court], possibly being under the impression that the case was permitted to have a post sentence motion, have made a different decision than if he knew the case could only be appealed to the Superior Court?

2. Was [Musgrave] denied due process by not being permitted to view the video which [] Vire presented as evidence in the hearing?

3. Did [the trial court] misinterpret the rights of a holdover tenant in the commercial lease?

4. Is there a lack of evidence that [Musgrave] was disorderly in his conduct?

5. Is there testimony by [] Vire and [] Officer Franks that appears to not make sense?

6. At the time of the alleged disorderly conduct incident, was [] Vire trespassing at the hair salon and therefore, had no right to press disorderly conduct charges?

7. Did the actions of [Musgrave] fit the definition of Disorderly Conduct?

Appellant's Brief, at 11-12 (suggested answers omitted).

Preliminarily, we note that Musgrave fails to cite to any pertinent authority in support of his arguments in violation of our rules of appellate procedure. *See* Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). In fact, Musgrave fails to cite to any case law at all in the argument section of his brief. The only legal citation included is the general definition of disorderly conduct. *See* Appellant's Brief, at 32. As such, his arguments are no more than undeveloped assertions.

"[A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." *Commonwealth v. Lyons*, 833 A.2d 245, 252 (Pa. Super. 2003) (citation omitted). "[A]ny layperson choosing to represent himself in a legal

- 3 -

proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing." ***Commonwealth v. Gray***, 608 A.2d 534, 550 (Pa. Super. 1992) (citation omitted).

Accordingly, we could find Musgrave's issues waived for failure to develop. ***See Lackner v. Glosser***, 892 A.2d 21, 29 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived"). However, to the degree we can ascertain his claims, we find they are without merit.

In his first issue, Musgrave claims the trial court judge may have made a different decision if he knew Musgrave could not file a post-sentence motion.

Relevantly, after finding Musgrave guilty of disorderly conduct, the trial judge stated to Musgrave "Sir, you have ten days to file any post sentence motions and 30 to file a direct appeal of the decision with the Superior Court of Pennsylvania." N.T., Summary Appeal Hearing, 2/3/23, at 32-33. This was an incorrect statement of Musgrave's post-trial rights. An appellant cannot file a post-sentence motion if he is convicted of a summary offense. ***See Commonwealth v. Dougherty***, 679 A.2d 779, 784 (Pa. Super. 1996); Pa.R.Crim.P. 720(D).

Nevertheless, Musgrave has failed to show any correlation between the court's incorrect statement and his conviction. Musgrave's post-sentence rights would have no effect on whether the Commonwealth met their burden of proving all elements of the offense beyond a reasonable doubt. Musgrave still had the opportunity to appeal his conviction, as he has done. Accordingly,

his inability to file a post-sentence motion is of no moment. Musgrave's first issue is without merit.

In his next issue, Musgrave contends his due process rights were violated because he was not permitted to view the video presented by the Commonwealth. Musgrave admits his counsel was able to view the video. However, he argues he "was not afforded the opportunity to argue the authenticity of the video or offer his interpretation of what was occurring." Appellant's Brief, at 25. These claims are belied by the record.

During the hearing, Vire stated on the witness stand that she had a video recording of the incident on her phone. *See* N.T., Summary Appeal Hearing, 2/3/23, at 6, 9. Neither the Commonwealth nor the defense had viewed the video prior to the hearing. *See id*. at 9. The court took a brief recess for counsel for the Commonwealth and the defense to view the video. *See id*. The Commonwealth thereafter requested to introduce the video into evidence. *See id*. at 11. In Musgrave's presence, defense counsel specifically stated that he had no objection to the admission of the video. *See id*.[1] Musgrave never made a request to view the video after it was admitted into evidence.

_____

[1] On appeal, Musgrave does not challenge his counsel's lack of an objection to admission of the video. In fact, he does not even acknowledge his counsel's statement that he did not object.

As Musgrave acquiesced to the admission of the video evidence through counsel, any claim challenging its admission on appeal is waived. **See** Pa.R.E. 103(a) (providing that a party may claim error in admission of evidence only when that party makes a timely and specific objection); **Commonwealth v. Bullock**, 518 A.2d 824, 826 (Pa. Super. 1986) ("A failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission."*)*.

We find issues three and six, which both challenge Vire's rights to the property owned by Musgrave, to be related and therefore will address them together. Musgrave claims the trial court misinterpreted the rights of a holdover tenant in the commercial lease for the applicable property. He claims that as a holdover tenant at the time of the incident, Vire was trespassing at the hair salon and therefore had no right to press disorderly conduct charges. Musgrave provides no authority which condones his actions, and permits him to act disorderly, because the victim and Musgrave disagreed over her status as a tenant. We are, therefore, unable to determine how these tenancy claims are relevant to the summary conviction for disorderly conduct.

The gist of Musgrave's claim seems to be that Vire was a holdover tenant, not a month-to-month tenant, and therefore she was trespassing on the property and did not have a right to possession of the premises.

At the hearing, the court inquired whether a term of the original lease had provided that the lease turned into a month-to-month tenancy after the

lease's expiration. *See* N.T., Summary Appeal Hearing, 2/3/23, at 29. Musgrave indicated that the term of the original lease was negated because a new lease had been sent to Vire. *See id*. Musgrave insinuated Vire's "possession" of the new lease negated the original lease. *Id*. The court then ended the conversation without any formal finding on that point.

None of the elements of the crime of disorderly conduct require a valid lease for property. *See* 18 Pa.C.S.A. § 5503(a). As such, we do not find the status of the lease to be relevant to whether Musgrave's conduct was disorderly. If in fact Musgrave believed Vire was a holdover tenant and/or a trespasser, there are proper procedures for evicting a tenant, separate from the situation at hand, that Musgrave admittedly did not pursue.

The remainder of Musgrave's issues challenge the sufficiency and weight[2] of the evidence supporting his conviction for disorderly conduct.

Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are

---

[2] An appellant generally must preserve a weight of the evidence claim in a post-sentence motion before the trial court. *See Dougherty*, 679 A.2d at 784. However, as an appellant cannot file a post-sentence motion if he is convicted of a summary offense, *see id*.; *see also* Pa.R.Crim.P. 720(D), this Court has held that an appellant may raise a weight claim for the first time on appeal if the trial court explicitly addressed weight and credibility in its opinion. *See Dougherty*, 679 A.2d at 784-85. Our review indicates that the trial court's opinion addressed weight and credibility, so we will address Musgrave's challenge to the weight of the evidence.

sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). The Commonwealth may meet this burden of proving every element of the crime by utilizing only circumstantial evidence. *See Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id*. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the factfinder, so long as the evidence presented is not utterly incapable of supporting the necessary inferences. *See id*. This Court does not independently assess credibility or otherwise assign weight to evidence on appeal. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004).

Disorderly Conduct is defined as follows:

**§ 5503. Disorderly conduct**

**(a) Offense defined.**— A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

    (1) engages in fighting or threatening, or in violent or tumultuous behavior;

    (2) makes unreasonable noise;

    (3) uses obscene language, or makes an obscene gesture; or

    (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor

    …

**(c) Definition.**— As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503(a), (c).

In addressing the sufficiency and weight issues, the trial court stated as follows:

> [Musgrave] claims it is unknown whether the client felt threatened. However, the evidence was sufficient to establish that [Musgrave]'s actions threatened the client since she asked Officer Franks to walk her to her car and has not returned to [Vire]'s hair salon since the incident. Additionally, [Vire] felt threatened.
>
> [Musgrave] also disputes the testimony. During the hearing he claimed he removed the locks because he was fixing them. However, Officer Franks had told [Musgrave] to stay away from [Vire]'s business and [Musgrave] had a rental agency to handle the rental lease issues.
>
> This [c]ourt found the testimony of Officer Franks and [Vire] to be credible. It is well-established that the finder of fact exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the testimony.
>
> The testimony established that [Musgrave] intended to cause public inconvenience, annoyance or alarm or recklessly created a risk thereof by engaging in threatening behavior. Therefore, this Court found [Musgrave] guilty of Disorderly Conduct.

Trial Court Opinion, 5/12/23, at 5-6 (citation omitted).

After careful review of the evidence presented, we find no error. The testimony, when viewed in a light most favorable to the Commonwealth as the verdict winner, was sufficient to prove the elements of disorderly conduct.

The trial court, as factfinder, credited Vire and Officer Franks' testimony over Musgrave's testimony. *See id*. Musgrave's actions occurred in a public place, as he was in a place of business. *See* 18 Pa.C.S.A. § 5503(c). The testimony established that Musgrave intended to cause public inconvenience, as not only was he in a place of business, but there was a client at the salon at the time. *See* N.T., Summary Appeal Hearing, 2/3/23, at 56. Despite the fact that Vire was actively working on the client's hair, Musgrave nevertheless decided to physically confront Vire and demand she sign the new lease. *See id*. at 6-7, 9. If Musgrave really wanted to speak with Vire, he easily could have approached Vire after the client left, or asked Vire, from a safe distance, to come meet him when she had a moment. However, as the leasing office was responsible for leasing issues, and was already taking care of the leasing matter, there really was no reason for Musgrave to approach Vire at all. *See id*. at 15. Finally, Officer Franks' testimony established that the client was in fear, as she requested that Officer Franks walk her to her car, and she has not returned to the salon since the incident. *See id*. at 6, 15. Accordingly, pursuant to our standard of review, we find the evidence was sufficient to sustain Musgrave's conviction for disorderly conduct. Musgrave is entitled to no relief on this claim.

In his fifth issue, Musgrave argues there is testimony by Vire and Officer Franks that appears to be untruthful and contradictory. This is a challenge to the weight of the evidence. *See Commonwealth v. Melvin*, 103 A.3d 1, 43

(Pa. Super. 2014) (providing that challenges to witness credibility pertain to the weight of the evidence). We do not review challenges to the weight of the evidence *de novo* on appeal. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. *See id*.

"[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

In its opinion, the trial court states that its decision was a credibility determination and that it believed Vire and Officer Franks' testimony. *See* Trial Court Opinion, 5/12/23, at 5-6. We cannot conclude that the trial court's credibility determination is shocking. Further, this credibility determination was thoroughly within the court's discretion and function as factfinder. Thus, a challenge to the weight of the evidence also merits no relief.

As none of Musgrave's issues on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/03/2024